## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BEVERLY A. BARNES**                          **CIVIL ACTION**

**VERSUS**                                     **NO. 12-2491**

**JOHN M. McHUGH,**
**SECRETARY,**                                 **SECTION "C" (5)**
**DEPARTMENT OF THE ARMY**

### ORDER AND REASONS[1]

Before the Court is a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendant, the United States of America, on behalf of John M. McHugh, Secretary, Department of the Army ("United States"). Rec. Doc. 21. Plaintiff Beverly A. Barnes ("Barnes") opposes the motion, and Defendant filed a reply. Rec. Doc. 26; Rec Doc. 33. Having examined the memoranda of counsel, the record, and the applicable law, the United States' motion is PARTIALLY GRANTED and PARTIALLY DENIED for the following reasons.

### I. BACKGROUND

Barnes filed this suit against the United States alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, under 42 U.S.C. § 1981a 2000e-5, 2000e-16, and the Age Discrimination in Employment Act of 1967 ("ADEA"), under 29 U.S.C. § 633a. Rec. Doc. 1, p. 1. Barnes, an African American female, age 68, alleges unlawful and discriminatory employment practices under Title VII and the ADEA arising during her employment as a GS-05/10 Secretary with the U.S. Army Reserve Command, 377th Theater Sustainment Command ("the Command")

---

[1]Kayla Lawrence, a second-year student at Tulane University Law School, assisted in the preparation of this Order and Reasons.

beginning in 1989. *Id.* at 2. Barnes makes allegations that amount to claims of disparate treatment discrimination, hostile work environment, retaliatory discrimination for participation in protected activity, and retaliatory hostile work environment.

In 1989, Barnes began her employment with the Command's Material Section as a Secretary GS-5/10. Rec. Doc. 1, p. 2. The Command reassigned her to the G6 Information Services Section in 1994, where Barnes remained in the position Secretary, GS-5/10. *Id*. at 3. Barnes has maintained the GS-5/10 position in the G6 Information Services Section for about twenty years. *Id.* at 4. During her employment, she earned a Bachelor's degree in Computer Science and Political Science, applied for and was denied several promotions, and filed six complaints with the Army Reserve's Office of Equal Employment Opportunity ("EEO") starting in 1991. *Id.* at 3-6.

Barnes asserts the following facts. She alleges that early in her employment, she was harassed by Command officers and staff in the form of condescending treatment, failure to train, and use of a racial slur. Rec. Doc. 1, p. 2. After filing an EEO complaint in January 1991, Barnes alleges she encountered further discrimination and reprisal. *Id.* at 3. Specifically, she contends the Command completed an "unjustified inflammatory and negative" Evaluation Report "in retaliation for filing her initial EEO complaint," which led to Barnes' second EEO complaint in 1992. *Id.* at 3. By 2003, Barnes had filed five EEO complaints for race and age discrimination or reprisal, and she contends that for this reason she was labeled a "trouble maker" at the Command. *Id.* at 3.

Barnes also alleges that the Command improperly completed two additional annual Evaluation Reports. Rec. Doc. 1, p. 4, 6. She alleges that the overall performance rating on her June 2005 annual Evaluation Report was lowered from "1" to "3" after she and her performance rater had already signed the evaluation. *Id.* at 6. She has provided the Court with the signed 2005 Report that

marks "1" as her rating, as well as the allegedly altered Report that marks "3" as her rating which is unsigned by Barnes and signed by her rater. Rec. Doc. 26-4, Exh. D, p. 12-17. She contends she did not discover the change until after she filed her final EEO complaint in July 2011. Rec. Doc. 1, p. 6. She also alleges that the Command improperly conducted her July 2011 annual Evaluation Report by removing several positive remarks and lowering her technical competence rating from "Excellence" to "Success." *Id.* at 4. She contends that the changes in the report were unmerited. *Id.*

Barnes also points to three instances in which she applied and was qualified for positions and the Command failed to promote her. First, in April 2011, she was not selected for the position of Family Readiness Support, GS-06. Rec. Doc. 1, p. 5. In Barnes' EEOC "Objections to Partial Dismissal and Motion to Reconsider," Barnes alleges that in September, 2011, the GS-06 vacancy was withdrawn. Rec. Doc. 26-8, p. 6-7.  Second, in August, 2011, Barnes alleges that after she had registered an informal EEO complaint of discrimination, a Command human resources representative, Glenda Cain, requested a copy of her résumé and advised Barnes that she was being considered for the Family Readiness Support GS-06 position, mentioned above. She alleges this incident occurred immediately before her formal EEO complaint was due. Rec. Doc. 1, p. 5. Soon after Barnes submitted her formal EEO complaint, she was advised that she was not qualified for the GS-06 position. *Id.* Lastly, in May 2012, Barnes applied and was not selected for the position of Secretary, GS-07. *Id.* at 5-6. She alleges she received notice that the position was cancelled or postponed. *Id.* Soon thereafter the position was re-advertised as a two-year term position. *Id.* at 6. Barnes additionally alleges that after engaging in protected activity, the Command "continuously and systematically" discriminated against her by failing to promote her, lowering ratings on her annual Evaluation Reports, denying requests for training, and assigning increased job duties beyond

3

her position and pay grade. *Id*.

In July 2011, Barnes filed her most recent EEO complaint, which she formally supplemented and amended in January 2012. Rec. Doc. 26-1; Rec. Doc. 26-2; Rec. Doc. 26-5. In May 2012, after the EEO partially dismissed and partially accepted claims in her July 2011 complaint, Barnes requested a hearing with the Equal Employment Opportunity Commission ("EEOC"). Rec. Doc. 26-3; Rec. Doc. 26-8. She then supplemented her EEOC complaint in June 2012 to include a claim regarding the Command's June 2012 failure to promote her to the position of Secretary, GS-07, mentioned above. Rec. Doc. 26-10; Rec. Doc. 26-11. Upon Barnes' request, the EEOC Administrative Judge dismissed the case in October 2011 due to Barnes' express intent to file suit in this Court. Rec. Doc. 26-12. The claims in this case arise from the July 2011 EEO informal complaint, the August 2011 EEO Formal Complaint, the January 2012 EEO supplemented and amended complaint, and the June 2012 EEOC amended complaint. Rec. Doc. 26-1; Rec. Doc. 26-2; Rec. Doc. 26-5; Rec. Doc. 26-10.

## II. LAW AND ANALYSIS

### A. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### 1. Sovereign Immunity

The United States and its agencies are protected against lawsuits except where its sovereign immunity is clearly waived. *Hercules Inc. v. United States*, 516 U.S. 417, 422, 116 S. Ct. 981, 985, 134 L. Ed. 2d 47 (1996) (quoting *United States v. Testan*, 424 U.S. 392, 399, 96 S. Ct. 948, 953-54, 47 L. Ed. 2d 114 (1976)). To clearly waive the Federal Government's sovereign immunity, the waiver "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092, 2096, 135 L. Ed. 2d 486 (1996). Under 42 U.S.C.A. § 2000e-16 (2013) and 29 C.F.R.

§ 1614.105(a) (2009), a federal employee may bring discrimination claims to a federal district court if the employee has timely filed her complaints with the EEO division of her agency and has exhausted all administrative remedies. If a federal employee has not timely exhausted administrative remedies, the employee's claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *See Fitzgerald v. Sec'y, U.S. Dept't of Veterans Affairs*, 121 F.3d 203, 206 (5th Cir. 2000) (explaining a federal employee's exhaustion of administrative remedies is "an absolute prerequisite" to filing suit under Title VII) (quoting *Porter v. Adams*, 639 F.2d 273, 276 (5th Cir.1981)); *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992) ("failure to notify [an] EEO counselor in timely fashion may bar a claim, absent a defense of waiver, estoppel, or equitable tolling"). Claims that are not independently actionable due to untimeliness or failure to exhaust may be used as evidence of discrimination for actionable claims. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072, 153 L. Ed. 2d 106 (2002).

### 2. Standard of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure demands dismissal when the court lacks jurisdiction over the subject matter asserted in the plaintiff's complaint. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof is on the party asserting jurisdiction. *Id.*; *see also Arena v. Garybar Elec. Co. Inc.*, 669 F.3d 214, 219 (5th Cir. 2012). In deciding a 12(b)(1) motion, a court may rely on (1) the complaint alone, presuming allegations as true; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Ramming*, 281 F.3d at 161; *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001).

### 3. Timeliness of Claims

The United States asserts that all claims that arose prior to June 5, 2011 should be dismissed as untimely. To timely file with the EEO under the Code of Federal Regulations, federal employees "must initiate contact with a[n] [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Because federal employees must contact an EEO Counselor within 45 days of the alleged discriminatory matter, the United States maintains that all of Barnes' claims that pre-date June 5, 2011 (45 days prior to July 20, 2011, the day Barnes initiated contact with the EEO) are time-barred. Rec. Doc. 21-1, p. 12. The Court holds that all of Barnes' claims are timely for the following reasons.

### a. Timeliness of Hostile Work Environment and Retaliatory Hostile Work Environment Claims

The United States maintains that all of Barnes' claims that arise from acts that pre-date June 5, 2011, including hostile work environment claims, are time-barred. Rec. Doc. 21-1, p. 11-12; Rec. Doc. 1. Barnes replies that her hostile work environment claims are not time-barred because the standard for evaluating time limitations for a hostile work environment claim is different from the standard for a claim arising from a discrete discriminatory act, and if one act contributing to the hostile work environment claim is timely, then the claim in its entirety is timely. Rec. Doc. 26, p. 10-11. She relies on *National Railroad Passenger Corp. v. Morgan* which explained that hostile work environment claims are "different in kind from discrete acts," because "their very nature involves repeated conduct" that can occur "over a series of days or perhaps years." 536 U.S. 101, 115 (2002); Rec. Doc. 26, p. 11. The Court further explained that only claims that arise from

"discrete discriminatory acts" are subject to the statutory time limitation. *Morgan*, 536 U.S. at 113-14. In *Morgan*, the Court defined discrete discriminatory acts as acts that are easy to identify, such as termination, failure to promote, denial of transfer, and refusal to hire. *Id*. at 114.

Negative performance evaluations are considered to be discrete discriminatory acts. *See Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 631-32, 127 S. Ct. 2162, 2171, 167 L. Ed. 2d 982 (2007), *superseded by statute on other grounds,* Lily Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 125 Stat. 5 (discussing Title VII disparate treatment claims arising from negative performance evaluations); *see also Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 539-41 (S.D.N.Y. 2002) (considering on a motion for summary judgment the merits of an employee's Title VII retaliation claim which arose from a negative evaluation report). Here, the only allegations that are considered discrete discriminatory acts that predate June 5, 2011 are (1) the Command's April 2011 failure to promote Barnes to the GS-06 position, (2) the Command's lowering of Barnes' overall performance rating on her 2005 Evaluation Report, and (3) Barnes' 1991 negative Evaluation Report. Rec. Doc. 1, p. 2-3, 6. These are the only claims that are susceptible to the 45-day limitation and must be individually analyzed for timeliness.

While discrete acts are subject to the time limitation, hostile work environment claims need only one contributing discriminatory act to occur within the filing period for a court to consider the "entire time period of the hostile environment . . . for the purposes of determining liability." *Morgan*, 536 U.S. at 117. Barnes alleges that the Command failed to promote her to a GS-06 position in August 2011. Rec. Doc. 1, p. 5. She has thus alleged a discriminatory act that contributes to the claim and falls into the filing time period. The Court therefore holds that her hostile work environment and retaliatory hostile work environment claims are timely.

### b. *Timeliness of Claims Arising from Discrete Discriminatory Acts Prior to June 5, 2011*

#### (1) April 2011 Failure to Promote

Barnes argues that a claim arising from the Command's April 2011 failure to promote her to the GS-06 position is not time-barred because her application was still pending during the filing period. Rec. Doc. 26, p. 10. The parties have not cited precedent on when the failure-to-hire date arises, but the Court finds Barnes' argument persuasive. As the record shows that in September 2011 the GS-06 position's vacancy was withdrawn, the alleged facts show that Barnes' non-selection occurred as of September 2011, which falls within the filing period. Rec. Doc. 26-8, p. 6. Thus, the Court finds claims arising from this allegation to be timely.

#### (2) 2005 Evaluation Report

Barnes next contends that a claim arising from the Command's change to her 2005 Evaluation Report is timely because the doctrine of equitable tolling applies. Equitable tolling allows the 45-day limitation to be waived under "exceptional circumstances." *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002). To warrant equitable tolling, a plaintiff must demonstrate that "she did not know and [it] reasonably should not have been known that the discriminatory matter or personnel action occurred." 29 C.F.R. 1614.105(a)(2). The federal regulation requires that "despite due diligence, [the employee] was prevented by circumstances beyond his or her control from contacting the counselor within the time limits . . ." *Id*. Further, the doctrine is to be applied "sparingly," and the burden is on the party who seeks equitable tolling to demonstrate that the exception applies. *Teemac*, 298 F.3d at 457.

The Fifth Circuit permits equitable tolling when: (1) a pending action between parties is in the wrong forum; (2) the plaintiff is unaware of the facts supporting his claim because defendant

8

intentionally concealed them; or (3) the EEOC misled the plaintiff about his rights. *Granger v. Aaron's, Inc*., 636 F.3d 708, 712 (5th Cir. 2011). The Fifth Circuit has explained that these are only "possible bases," and that it is feasible "to recognize other ones." *Id.*; *Wilson v. Sec'y, Dep't of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir.1995) (per curiam). Recently, in *Phillips v. Leggett & Platt, Inc*., the Fifth Circuit expanded the scope of possibilities for the application of equitable tolling when it asked "whether [the employee] *was unaware of, or misled about*, facts necessary to support her claim" when deciding whether equitable tolling applied to an ADEA claim. 658 F.3d 452, 457 (5th Cir. 2011) (emphasis added). The Court then applied the elements of an age discrimination claim in order to discover whether the employee knew during the filing period facts necessary to support her claim. *Id.* There, the Court concluded that because the employee knew all necessary facts during the filing period and was not misled by her employer, equitable tolling did not apply to her claim. *Id.* at 457-59.

Here, the Court follows the *Phillips* case. The application of equitable tolling depends on whether Barnes knew, or was misled about, facts necessary to support a claim. To have been expected to file a complaint of retaliatory discrimination during a filing period beginning in June 2005, Barnes should have known during the filing period that: (1) she participated in an activity protected by Title VII; (2) the Command took an adverse employment action against her; and (3) a causal connection existed between her protected activity and the adverse employment action. *Id.*; *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). Discrimination claims also require the employee to have suffered an adverse employment action. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

Barnes alleges that she was not aware that her Evaluation Report had been changed from the

9

better rating of "1" to the lesser rating of "3" until after she filed her July 2011 EEO complaint. Rec. Doc. 1, p. 6. She also alleges that both she and her performance rater signed the completed Evaluation Report with the higher rating, insinuating that she was misled about her 2005 performance rating. *Id.* Barnes has provided the Court with the 2005 Evaluation Report that marks "1" as her overall rating which she and her rater signed, and the Report that marks "3" which she has not signed and her rater has signed. Rec. Doc. 26-4, Exh. D, p.12-17. Considering the documentation in the record together with Barnes' allegations, the Court finds that Barnes reasonably would not have known, or was misled about, facts necessary to support a claim arising from the 2005 Evaluation Report. The Court further finds that Barnes would have had no reason to anticipate the Report would later be changed, and that she therefore had no due diligence obligation "to discover essential information bearing on the existence of [her] claim" or to file an EEO complaint within 45-days of the incident. *Pacheco*, 966 F.2d at 906-07. Therefore, equitable tolling is warranted, and a claim arising from the Command's changes to Barnes 2005 annual Evaluation Report is timely.

### *(3) 1991 Evaluation Report*

Lastly, we consider the timeliness of independent claims arising from the Command's negative ratings on Barnes' 1991 Evaluation Report. Rec. Doc. 21-1, p. 11-12. Though the parties do not mention the Lily Ledbetter Fair Pay Act of 2009 ("FPA") in their briefs, the FPA has affected the Title VII and ADEA time limitations. Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5, 5 (2009). The FPA applies to "all claims of discrimination in compensation . . . that are pending on or after" May 28, 2007. Pub. L. No. 111–2, § 6, 123 Stat. 5, 5. As amended, the statutes read:

> For the purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this [title/chapter], when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or *when an individual is affected by application of a discriminatory compensation decision or other practice*, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such decision or other practice.

42 U.S.C.A. § 2000e-5(e)(3A); 29 U.S.C.A. § 626(d)(3) (emphasis added). Similar language was added to the Americans with Disabilities Act and the Rehabilitation Act. Congress's purpose was to reverse the Supreme Court's decision in *Ledbetter v. Goodyear Tire and Rubber Co., Inc.* 550 U.S. 618 (2007); Pub. L. No. 111-2, § 2(1), 123 Stat. 5, 5. In *Ledbetter*, the Court rejected an employee's argument that the disbursement of each paycheck triggered a new EEOC filing period because her pay was affected by her employer's past discriminatory acts. 550 U.S. at 633, 637. The Court found that the employee's construction of time limitations was irreconcilable with Supreme Court precedent and was not supported by the statute as written. *Id*. at 636, 637, 642-43. In Congress's view, however, the *Ledbetter* decision "undermines statutory protections by unduly restricting the time period in which victims of discrimination can challenge and recover for discriminatory compensation decisions or other practices, contrary to the intent of Congress." Pub. L. No. 111-2, § 2(1), 123 Stat. 5, 5. Under the FPA, EEOC (or EEO, for federal employees) filing periods now may begin when the employee is affected by discriminatory decisions.

For the FPA to apply to a claim arising from her 1991 Evaluation Report, Barnes must allege that she was affected by discrimination in compensation on June 5, 2011 by the alleged discriminatory act. Pub. L. No. 111–2, § 3, 123 Stat. 5, 5. Courts do not agree as to whether a single discrete act constitutes discrimination in compensation. For example, in *Smith v. Shinseki*, a district

court found that the FPA did not apply to an employee's ADEA claim when he was transferred from working as a carpentry shop employee to a lower wage housekeeping employee. No. 09–3664, 2010 WL 3909166, at *1-2 (E.D. La. Dec. 27, 2010). The court reasoned that the employee's claim was time-barred because the FPA "offers no relief with respect to identifiable discrete employment actions, such as a failure to promote or transfer," and did not consider whether the employee's compensation was affected by the discriminatory act at each paycheck. *Id.* at *1.

Conversely, two recent district court decisions found that as long as an employee's compensation is affected by a discrete discriminatory act, the FPA applies to the claim, allowing the clock to begin running each time an employee's payment is dispersed. In the first, *Gentry v. Jackson State University*, the court held that the FPA applied when an employee was denied tenure and a salary increase allegedly due to her gender and the statute of limitations had passed. 610 F. Supp. 2d 564, 566-67 (S.D. Miss. 2009). The court found that the denial of tenure, which the employee contended negatively affected her compensation, qualified as a "compensation decision" or "other practice" under the FPA. *Id.* at 567. The court reasoned that although the denial of tenure was a discrete act, it was coupled by a denial of a salary increase, which qualified the denial of tenure as a compensation decision. *Id.*

In the second case, *Vuong v. New York Life Insurance Co.*, a district court found that an employer's single discriminatory act warranted the application of the FPA. 03CIV.1075(TPG), 2009 WL 306391, at *8-9 (S.D.N.Y. Feb. 6, 2009). There, an employee brought a Title VII discrimination claim after his employer decided to allocate a lesser percentage of the company's performance-related compensation to him than the employee's co-Managing Partner. *Id.* at *8. The employee argued that the FPA applied to his claim because each paycheck compensated him less than would

have been had the discriminatory decision not occurred. *Id.* at *9. The court agreed with the employee's argument and held that the employee's claim was the type of claim that "is expressly declared to be timely by virtue of the recently enacted law." *Id.*

The Court agrees with the latter two decisions and applies the FPA to discrete discriminatory acts that affect an employee's compensation. When enacting the FPA, Congress sought to prevent the time-barring of claims that arise from discriminatory acts which continually affect an employee's compensation, as it was the *Ledbetter* decision that prompted Congress to take action. Therefore, to have jurisdiction over Barnes' claims arising from the Command's negative ratings on her 1991 Evaluation Report, Barnes' complaint must allege that her compensation was affected as of June 5, 2011, 45 days prior to her initial contact with the EEO. In her district court complaint, Barnes asserts that she "has been damaged as the result of the unlawful and intentional discriminatory and retaliatory employment practices of the 377th Command [as described in her discrete allegations], and that she is . . . entitled to compensatory damages, including . . . back pay, front pay, [and] loss of benefits, . . ." Rec. Doc. 1, p. 6-7. She also alleges that she performed duties beyond her paygrade. She has therefore alleged that her compensation was affected by the 1991 negative Evaluation Report, and the FPA is applicable to claims arising from the incident. A claim arising from her 1991 report is thus timely.

### 4. Exhaustion of Administrative Remedies

At issue is whether Barnes' claims that were not asserted in her July 2011 EEO complaint have exhausted their avenues of relief through the administrative process. The Fifth Circuit has consistently held that Title VII and ADEA claims that have not been exhausted through the administrative process cannot be filed in federal court. *Fitzgerald v. Sec'y, U.S. Dep't of Veterans*

*Affairs*, 121 F.3d 203, 206 (5th Cir. 1997); *see also Tolbert v. United States*, 916 F.2d 245, 248 (5th Cir. 1990) (holding that the doctrine of exhausted relief applies with "equal force" to ADEA and Title VII claims). To exhaust administrative remedies and merit district court jurisdiction, a federal employee's civil action must be commenced either (1) within 90 days of receipt of notice of final agency action, or (2) if no final action has been taken, after 180 days have elapsed from the date on which the initial charge was filed with the department, agency, or unit or with the EEOC on appeal from a decision or order of such department, agency. 42 U.S.C.A. § 2000e–16(c) (2013); *Martinez v. Dept. of U.S. Army*, 317 F.3d 511, 512 (5th Cir. 2003). Here, because Barnes did not receive notice of a final EEO(C) action, she relies on the fact that her July 2011 initial EEO complaint was filed at least 180 days prior to filing suit in federal court.

The United States asserts that because claims arising from allegations of the Command's modification of Barnes' 2005 Evaluation Report, April 2011 failure to promote, and June 2012 failure to promote were not included in Barnes' July 2011 EEO complaint, remedies have not been properly exhausted for those claims. Rec. Doc. 21-1, p. 13. Barnes maintains that remedies have been exhausted for all contested claims because she amended her EEO and EEOC complaints to include all allegations that are now contested, and because all supplemented claims are "closely related" to claims asserted in the original EEO complaint. Rec. Doc 26, p. 12-14. For reasons discussed below, the Court holds that only a claim arising from Barnes' May 2012 failure to promote allegation has not exhausted its administrative remedies.

### a. 2005 Evaluation Report and April 2011 Failure to Promote

First, a claim is not barred for lack of exhaustion because an allegation is not present in the employee's *original* complaint. Neither the statute nor precedent bars claims for failure to exhaust

when timely filed claims were amended, as courts often look to the claims included in employees' amended EEO(C) complaints when deciding whether district court claims have been exhausted. 42 U.S.C.A. § 2000e–16(c); *see generally Barnes v. Levitt*, 118 F.3d 404, 407-09 (5th Cir. 1997) (considering an amended EEO complaint when holding an employee did not exhaust administrative remedies because she failed to cooperate with the administrative procedures); *White v. Potter*, CIV. A. 1:06-CV-1759, 2007 WL 1330378, at \*5-6 (N.D. Ga. Apr. 30, 2007) (holding an employee's retaliation claims were not exhausted because they were not present in his initial or amended EEO complaints).

Here, Barnes' amended her EEO complaint in January 2012 to include allegations of the 2005 Evaluation Report and the April 2011 failure to promote. Rec. Doc. 26-5, p. 5-6. Considering Barnes' district court complaint was not filed until October 2012, the EEOC had more than 180 days to investigate the June 2005 and April 2011 allegations. Rec. Doc. 1. Thus, Barnes properly exhausted her remedies pertaining to claims arising from her June 2005 evaluation and April 2011 non-selection.

### b. June 2012 Failure to Promote

Next, the United States argues that a claim arising from the Command's June 2012 failure to promote Barnes to the GS-07 Secretary position should be dismissed because it is a "discrete, separate claim that occurred after the EEO investigation was complete on March 13, 2012." Rec. Doc. 33, p. 6. The United States maintains that because neither the EEO nor the Administrative Judge was afforded the opportunity to review the claim, remedies have not been not exhausted. *Id.* Barnes responds that this Court has jurisdiction because the Administrative Judge approved Barnes' request to amend and supplement her EEOC complaint to add the 2012 claim in June 2012. Rec.

15

Doc. 26, p. 14; Rec. Doc. 26-11. She further argues that the claim was properly exhausted because, as the claim is a failure to promote claim, it was closely related to the failure to promote claims originally asserted and supplemented in the 2011 EEO complaint. Rec. Doc. 26, p. 14.

The Court must decide whether Barnes' June 2012 failure to promote claim is barred because it was supplemented to the EEO complaint less than 180 days before she filed in federal court. In determining whether administrative remedies have been exhausted, courts have struggled to find the balance between construing EEOC complaints broadly in order to protect unsophisticated victims of employment discrimination and construing complaints narrowly enough to ensure that courts are promoting the resolution of discrimination claims through the administrative process. *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). Courts have reconciled these considerations by allowing a lawsuit to include allegations "like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission." *Id.* at 273 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466-67 (5th Cir. 1970)). Therefore, if an allegation "can reasonably be expected to grow out of the charge of discrimination," which is a "fact intensive" analysis, courts allow the allegation to be included in the lawsuit. *Id.*

Here, the dismissal of Barnes' June 2012 failure to promote claim hinges on whether it is reasonably expected to grow out of allegations included in her timely EEO and EEOC complaints. As no precedent is cited by the parties, the Court looks to the Eleventh Circuit's persuasive analysis on whether a failure to promote claim is like or related to earlier failure to promote claims:

> [The employee's] EEOC charge alleged two instances of failure to promote (June 2001 and October 2001), but his [district court] complaint added a third instance, the June 2002 allegation, which occurred after the filing of the charge. The June 2002 allegation did not amplify or clarify the previous allegations, nor did it grow out of the previous claims. A purpose of Title VII's exhaustion requirement is to notify the

> defendant of the allegations and to give the EEOC "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Green v. Elixir Ind., Inc.*, 407 F.3d 1163, 1167 (11th Cir.2005) . . . [T]here was nothing in the charge that would have put the employer on notice of his June 2002 claim. Nor did the EEOC ever have an opportunity to investigate [the June 2002 claim]. Accordingly, the district court properly refused to consider the June 2002 claim as being outside the scope of the EEOC charge.

*Stuart v. Jefferson Cnty. Dep't of Human Res.*, 152 F. App'x 798, 801 (11th Cir. 2005). Even though Barnes amended her EEOC claim to include the June 2012 claim, she filed her federal suit before 180 days had passed. The EEOC therefore did not have an opportunity to investigate the claim, because, as the Eleventh Circuit held, a failure to promote claim is not like or related to earlier failure to promote claims. To have jurisdiction in this Court, then, Barnes must file a claim with the EEO and exhaust administrative remedies for her May 2012 claim. The Defendant's motion to dismiss the May 2012 claim is thus granted, and the Court dismisses the claim without prejudice.

**B. 12(b)(6) Motion to Dismiss for Failure to State a Claim**

**1. Standard of Review**

In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff must include in her complaint "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). In considering whether claims should be dismissed, a district court must accept the factual allegations of the complaint as true and resolve all ambiguities or doubts regarding the sufficiency of the claim

17

in favor of the plaintiff. *Twombly,* 550 U.S. at 555; *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). A claim should not be dismissed unless "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 246, 100 S. Ct. 502, 511, 62 L. Ed. 2d 441 (1980) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102, 2 L. Ed. 2d 80 (1957)). However, if the complaint contains only "conclusory allegations and unwarranted deductions of fact," dismissal is warranted. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citing *Fernandez-Montes*, 987 F.2d at 384).

While a plaintiff must establish a prima facie case on motion for summary judgment, the Rule 12(b)(6) standard only requires the plaintiff state a short and plain statement of the claim that shows she is entitled to relief. *Compare Lee v. Kansas City S. R.R. Co.*, 574 F.3d 253, 257, 259 (5th Cir. 2000) (applying the elements of an employment discrimination claim on appeal from a summary judgment), *with Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 997-98, 152 L. Ed. 2d 1 (2002) (holding that imposing a prima facie requirement during the pleadings stage is inappropriate). In *Swierkiewicz*, the Supreme Court explained that because "the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." 534 U.S. at 512. Further, while Barnes does not need to prove each element of her claims at this stage, her "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This inquiry "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" that her claims are merited. *Id.* at 556.

18

### 2. Plaintiff's Challenged Claims

The United States asserts that Barnes' claims cannot survive a motion to dismiss because she fails to establish a prima facie case for any asserted claim. Rec. Doc. 21-1, p. 14-19. Barnes replies that a plaintiff does not need to make out a prima facie case during the pleadings stage, and that her complaint satisfies Federal Rule of Civil Procedure 8(a)(2). Rec. Doc. 26, p. 14-15. For the following reasons, the Court concludes that Barnes has pleaded enough facts to raise a right to relief above the speculative level for all asserted claims except her ADEA disparate treatment claims.

Courts have recognized several types of Title VII and ADEA claims. A plaintiff can assert "status-based" Title VII claims under 42 U.S.C.A. § 2000e-2(a) and (k), "retaliation" claims under 42 U.S.C.A. § 2000e-3, and "hostile work environment" claims, both for status-based discrimination and retaliation. Title VII status-based discrimination claims are divided into two categories: "disparate treatment" claims pursuant to § 2000e-2(a)(1), and "disparate impact"claims pursuant to 2000e-2(k).Under 2000e-16, federally-employed plaintiffs may bring Title VII claims for "any discrimination based on race, color, religion, sex, or national origin," and the section provides specific timing requirements for federal employees. 42 U.S.C.A. § 2000e-16; *Ricci v. DeStefano*, 557 U.S. 557, 577, 129 S. Ct. 2658, 2672, 174 L. Ed. 2d 490 (2009). The ADEA prohibits employment discrimination on the account of an individual's age. 29 U.S.C.A. §§ 623, 633. Under § 623, the private-sector provision of the ADEA, courts recognize "disparate treatment" claims and "hostile work environment claims." Federally-employed plaintiffs can assert ADEA "retaliation" claims pursuant to § 633a(a). *Gomez-Perez v. Potter*, 553 U.S. 474, 489-91, 128 S. Ct. 1931, 1941-43, 170 L. Ed. 2d 887 (2008). In this case, Barnes asserts disparate-treatment discrimination claims and hostile work environment claims under Title VII and ADEA, and retaliation and retaliatory

hostile work environment claims under Title VII.

### a. Discrimination Claims

The Court must decide whether Barnes' has stated Title VII and ADEA status-based discrimination claims for disparate treatment arising from Barnes' allegations of failure to promote and negative evaluation reports. The standard for a Title VII status-based discrimination claim is not equivalent to the standard for an ADEA age discrimination claim. *See Univ. of Tex. Sw. Med. Ctr v. Nassar*, No. 12–484, 2013 WL 3155234, at *4, *10, *12. (U.S. June 24, 2013) (explaining that while a but-for causation standard is appropriate for Title VII retaliation claims, a but-for causation standard is not appropriate for status-based Title VII claims); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 S. Ct. 2343, 2352, 174 L. Ed. 2d 119 (2009) (holding that the proper standard for ADEA disparate-treatment claims is the but-for causation standard). In *Gross*, the Supreme Court held that the words "because of" in the text of the ADEA do not authorize "mixed-motives age discrimination claims," because the ordinary meaning of the text calls for a "but-for" analysis of causation. 557 U.S. at 175-76. The Court held that a plaintiff must prove by a preponderance of evidence that age was the but-for cause of the alleged disparate treatment discrimination. *Id.* at 177-78.

The *Gross* decision that mixed-motivation ADEA claims are necessarily invalid implies that a plaintiff's ADEA claim must be dismissed if it arises from the same discriminatory employment decision as a plaintiff's Title VII claim. 557 U.S. at 175-76. Here, Barnes has not differentiated between which discriminatory employment decisions were racially-motivated and which were age-motivated. Rec. Doc. 1, p. 1-2, 4. Neither has Barnes pleaded that her age in fact caused the discriminatory decisions. *Id.* The Court dismiss Barnes ADEA claims if they are not clarified. The

Court grants Barnes 15 days to amend her complaint to clarify and sufficiently plead her ADEA claims.

The Court next considers whether Barnes has stated Title VII status-based discrimination claims. In the recent case *University of Texas Southwestern Medical Center v. Nassar* the Supreme Court clarified the appropriate causation standards for Title VII status-based claims and retaliation claims. No. 12–484, 2013 WL 3155234, at * 1 (U.S. June 24, 2013). The Court explained that § 2000e-2(m), which calls for a "motivating-factor" causation standard, applies to Title VII status-based claims brought under 2000e-2 and not to retaliation claims brought under 2000e-3. *Nassar*, No. 12–484, 2013 WL 3155234, at *4,*9-10, *12-14, *16. The Court noted that Congress added § 2000e-2(m) to § 2000e-2 with the passing of the Civil Rights Act of 1991, two years after the Supreme Court held in *Price Waterhouse v. Hopkins* that plaintiffs pursuing status-based discrimination must show that "one of the prohibited traits was a 'motivating' or 'substantial' factor in the employer's decision." *Nassar*, No. 12–484, 2013 WL 3155234, at *7; *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46, 123 S. Ct. 1775, 1787-88, 154 L. Ed. 2d 753 (1989), *codified in part and abrogated in part by statute,* as stated in *Nassar*; *see also* §§ 2000e-2(m), 2000e-5(g)(2)(B). The Court reasoned that because "Congress has in explicit terms altered the standard of causation for one class of claims but not another, despite the obvious opportunity to do so," the added provision that calls for the lessened causation standard only was meant to apply to the status-based discrimination provision § 2000e-2. *Nassar*, No. 12–484, 2013 WL 3155234, at *12-14. Also, applying the Court's reasoning in *Gross*, the Court concluded that Title VII retaliation claims require a "causation in fact," or "but-for" standard, because the anti-retaliation text in 2000e-3 contains the words "because of," in the same manner as the text in the ADEA. *Id.* at *9-10, *16.

21

In light of *Nassar* and *Price Waterhouse*, the causation standard applied to status-based claims is the motivating factor standard. *Nassar,* No. 12-484, 2013 WL 3155234, at *3-4, *8; *Price Waterhouse,* 490 U.S. at 244-46. A plaintiff must therefore show that "the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Nassar,* No. 12-484, 2013 WL 3155234, at *4. In addition to this causation standard, a disparate treatment discrimination claim for failure to promote under Title VII is established by showing the plaintiff: (1) is a member of a protected class; (2) was qualified for the position at issue; (3) was discharged or was the subject of an adverse employment action; and (4) "after [the employee applied and was qualified for the position] the position remained open and the employer continued to look for candidates with plaintiff's qualifications." *Munoz*, 200 F.3d at 299. For a basic disparate treatment claim, a plaintiff must show only the first three elements listed above as well as that she "was treated less favorably because of her membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

First, the Court considers a disparate treatment discrimination claim for failure to promote. The United States contends that Barnes' disparate treatment claims for failure to promote should be dismissed because she does not meet the third element of a prima facie discrimination claim. The United States relies on *Walker v. Thompson*, which defines adverse employment actions as "ultimate employment decisions," such as "hiring, granting leave, discharging, promoting and compensation." 214 F.3d 615, 629 (5th Cir. 2000)*, abrogated on other grounds*. The United States' argument, however, depends on the majority of Barnes' claims being dismissed on its Rule 12(b)(1) motion.

In its brief, the United States only refers to discrimination claims that arise from Barnes' July 2011 annual Evaluation Report and the October 2011 incident which involved Barnes occupying an "excess" position. Rec. Doc. 1, p. 4-5. Barnes' claim that arises from the Command's April 2011 failure to promote her to the GS-06 position survived the Rule 12(b)(1) motion. Rec. Doc. 1, p. 5. Because she has alleged that she applied and was qualified for a position and was not hired, she has alleged a decision in "promoting and compensation" and has thus alleged an adverse employment decision. *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001) (referring to a racially motivated failure to promote or train as an adverse employment decision). Also, because she has alleged that her race was a cause of the employment decision, she has pleaded the causation standard for a Title VII disparate treatment claim. Thus, the Court finds the United States' argument to be invalid.

The Court next considers a Title VII disparate treatment claim for negative evaluation reports. The United States maintains that conducting a negative performance evaluation cannot be considered an ultimate employment decision. Rec. Doc. 21-1, p. 15. Although Title VII does not address "every decision made by employers that arguably might have some tangential effect upon ultimate decisions," it is not appropriate for the Court to decide during the motion to dismiss stage whether the conducting of negative evaluation reports is an ultimate employment decision. *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (quoting *Burger v. Cent. Apartment Mgmt.*, 168 F.3d 875, 878 (5th Cir.1999). Ultimate employment decisions are typically decided at later points in litigation. *Id.* (affirming summary judgment for employer when alleged discriminatory action did not rise to the level of an ultimate employment decision); *see also Hamilton v. Tex. Dep't of Transp.*, 85 F. App'x 8, 11-13 (5th Cir. 2004) (affirming summary

23

judgment); *Davila v. White*, No. 02-41332, 2003 WL 1103593, at *2-3 (5th Cir. Feb. 13, 2003) (affirming summary judgment). If it were clear that the reports "only limit[ed]" Barnes' "opportunities for promotion or lateral transfer," then dismissal would be warranted. *Banks*, 320 F.3d at 575. However, such a factual determination is contested by Barnes. She asserts that her pay was affected by the alleged discriminatory treatment, and that she occupied the same job for twenty years partly because of her negative evaluation reports. Rec. Doc. 1, p.4, 6-7. The Court therefore holds that Barnes has stated a discrimination claim for disparate treatment under Title VII.

### b. Hostile Work Environment Claims

Second, the United States contends that Barnes' hostile work environment claims should be dismissed because the alleged actions are not severe or pervasive. The standards for Title VII and ADEA hostile work environment claims are different. For an ADEA hostile work environment claim, a plaintiff must show (1) she was over the age of 40; (2) the employee was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011).

Although the Supreme Court held in *Gross* that the proper causation standard for ADEA disparate treatment claims is causation in fact, the Fifth Circuit has distinguished disparate treatment claims and hostile work environment claims under ADEA.[2] The Fifth Circuit, in *Reed v. Neopost USA, Inc.*, did not apply the causation in fact standard to an ADEA hostile work environment claim.

---

[2]For an example of the Fifth Circuit's differentiation between disparate treatment claims and hostile work environment claims under ADEA, see *Gobert v. Saitech, Inc.*, 439 F. App'x 304, 306 (5th Cir. 2011).

*Gross*, 557 U.S. at 180; *Reed*, 701 F.3d 434, 442-43 (5th Cir. 2012). The Court in *Gross* applied the heightened standard to disparate treatment claims, but did not address ADEA hostile work environment claims. 557 U.S. at 176-80. Additionally, the basis for the Court's decision in *Gross* is the word "because" contained in the statutory text, which the Court found implied a causation in fact standard. 557 U.S. at 176. While hostile work environment claims under ADEA and Title VII are derived from the statutes, they are essentially common law constructions. *See Vance v. Ball State Univ.*, No. 11-556, 2013 WL 3155228, at *4 (U.S. June 24, 2013) ("not long after Title VII was enacted, the lower courts held that Title VII also reaches the creation or perpetuation of a discriminatory work environment"); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64-68, 106 S. Ct. 2399, 2404-06, 91 L. Ed. 2d 49 (1986) (discussing the origins of Title VII hostile work environment claims). Therefore, the Court here follows the Fifth Circuit and applies *Reed*, which does not apply the heightened but-for standard to hostile work environment claims. 701 F.3d at 442-43.

Here, Barnes asserts that the hostile work environment was created because of her "race and/or age." Rec. Doc. 1, p. 4. Because Barnes has brought to the Court's attention that her age is an issue in this case, she has alleged the proper causation standard for ADEA hostile work environment claim. Also, taking allegations in the complaint as true, Barnes has asserted that she is over the age of 40; that the Command failed to promote her, that she was given increased responsibilities without increased pay, that she receive unwarranted negative evaluation reports, and that she is entitled to back and front pay. Rec. Doc. 1. Barnes also alleges that the Command continuously and systematically discriminated against her, creating a hostile work environment. *Id.* at 6. Barnes has thus stated a claim for hostile work environment under ADEA.

25

A hostile work environment claim under Title VII requires the plaintiff to show that the work environment "was sufficiently severe or pervasive to alter the conditions of her employment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986). Further, a prima facie case requires a plaintiff to show that "more than just a few isolated incidents of racial enmity" occurred. *Roberts v. Tex. Dept. of Human Servs.*, No. 00-41335, WL1468757, at *2 (5th Cir. Oct. 31, 2001). Occasional racial comments do not rise to the level of severe or pervasive harassment. *Id.* "It is only a violation of Title VII when the workplace is so 'heavily polluted with discrimination as to destroy the emotional and psychological stability of the minority [employee].'" *Id.* (quoting *Rogers v. E.E.O.C.*, 454 F.2d 234, 238 (5th Cir. 1971) *cert. denied*, 406 U.S. 957, 92 S. Ct. 2058, 32 L. Ed. 2d 343 (1972), *cited with disapproval on other grounds in E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 62, 104 S. Ct. 1621, 1628, 80 L. Ed. 2d 41 (1984)).

Here, taking allegations in the complaint as true, Barnes has asserted that she is a member of a protected group; that she was subjected to harassment, racial slur, failure to train, failure to promote, increased responsibilities without increased pay, and negative evaluation reports; that these acts affected the terms, conditions, and privileges of her employment; that she is entitled to back and front pay; and that her protected activity was common knowledge at the Command. Rec. Doc. 1. Barnes also alleges that the Command continuously and systematically discriminated against her. *Id.* at 6. Because Barnes has alleged that discriminatory conditions were severe enough to alter her conditions of employment, she has stated a claim for hostile work environment under Title VII. *Id.* at 6-7.

### c. Title VII Retaliation Discrimination Claims

Third, the United States urges the Court to dismiss Barnes' retaliation claim because the

alleged action does not rise to the level of a materially adverse action and because causation is insufficient. Rec. Doc. 21-1, p. 16-17. To establish a retaliation claim, an employee must show that (1) she engaged in a protected activity as defined by Title VII; (2) her employer was aware of that activity; (3) she suffered a materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *McCoy*, 492 F.3d at 556-57. Because Title VII's antiretaliation provision, like the ADEA, contains the word "because," the causation standard for Title VII retaliation claims must meet the but-for test. 42 U.S.C.A. § 2000e-3(a); *Nassar*, 12-484, 2013 WL 3155234, at *10, *14. The United States challenges the latter two elements.

The United States' argument that Barnes did not suffer from a materially adverse action is unmerited. The Supreme Court has held that the anti-retaliation provision "is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe R.R. v. White*, 548 U.S. 53, 64 (2006). The question of materiality asks whether "a reasonable worker [would be dissuaded] from making or supporting a charge of discrimination." *Id.* at 68. This objective standard is typically a question reserved for the fact finder. *Id.* at 69-70.

The United States also challenges the causal connection between the protected activity and the adverse employment action. The United States argues that the temporal proximity between Barnes' August 2003 EEO complaint and the Command's alleged retaliation is insufficient to establish causation. Rec. Doc. 21-1, p. 16. The United States relies on *Clark County School District v. Breeden*, which held that proximity must be "very close" and that twenty months between employee's protected activity and adverse employment action indicates no causation. 532 U.S. 268, 273-274, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001). However, "[c]lose timing between an

27

employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a prima facie case of retaliation." *Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001) (quoting *Swanson v. Gen. Servs. Admin.,* 110 F.3d 1180, 1188 (5th Cir.1997) (emphasis omitted)). Therefore, if proximity is very close, and a plaintiff has shown but-for her participation in protected activity the discrimination would not have occurred, then causation is established. *See Nassar*, 12-484, 2013 WL 3155234, at *10, *14.

Here, contrary to the United States' contention, Barnes does not rely on her August 2003 complaint to establish proximity. She alleges that after she filed an informal complaint in 2011, she was considered for the position of Family Readiness Support, GS-06, and soon after filing her formal complaint in July 2011, Barnes was advised that "she was not qualified for the [GS-06] position." Rec. Doc. 1, p. 5. Because the temporal proximity between the filing of her formal complaint and being denied the position is described as "shortly thereafter" in Barnes' complaint, this Court determines that proximity is very close, as required by *Breeden* and expounded on in *Evans*. Rec. Doc. 1, p. 6. The Court construes Barnes' argument to plead a but-for standard.

Barnes also asserts that because she has filed many EEO complaints, her protected activity was "common knowledge," and that the Command labeled her a "trouble maker" for her participation in protected activity. Rec. Doc. 1, p. 3. She also asserts that several discriminatory acts occurred because of the Command's common knowledge of her protected activity. *Id.* at 2-6. Considering the ongoing nature of her protected activity and the alleged retaliatory conduct, this Court concludes that Barnes has stated a retaliation claim under Title VII pertaining to allegations that occurred before and after the July 2011 EEO complaint.

### d. Retaliatory Hostile Work Environment Claim

Finally, the United States argues that Barnes' retaliatory hostile work environment claim should be dismissed because the Fifth Circuit has not recognized hostile work environment claims under Title VII. The United States erroneously relies on *Fallon v. Potter*. 227 F. App'x 422, 425-26 (5th Cir. 2008). In *Fallon*, the Court recognized a retaliatory hostile work environment claim when it applied the elements of a retaliation claim as it analyzed a retaliatory hostile work environment claim. *Id.* There, on appeal from a summary judgment, the Court held the activity that contributed to the retaliatory hostile work environment failed to create a disputed fact issue as to causation. *Id.* at 426. Because the Fifth Circuit has considered a retaliatory hostile work environment claim, it has therefore recognized its potential validity. Thus, the United States' argument is unmerited, and Barnes has stated a retaliatory hostile work environment claim under Title VII.

### III. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's  Motion to Dismiss is GRANTED IN PART as to Plaintiff's May 2012 Failure to Promote claim and ADEA disparate treatment claim, and DENIED IN PART as to all of Plaintiff's remaining claims. Rec. Doc. 21.

IT IS FURTHER ORDERED that Plaintiff is given until 4:30 p.m. on July 26, 2013 to amend her complaint to plead the proper causation standard for her ADEA disparate treatment claim.

New Orleans, Louisiana, this 11th day of July, 2013.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE